LIQUID GLASS ENTERPRISES,
INC., Plaintiff,

v.

DR. ING. h.c.F. PORSCHE AG and
Porsche Cars North America,
Inc., Defendants.

Civil Action No. 97–4978(MTB).

United States District Court,
D. New Jersey.

March 30, 1998.

John Roger Masi, Hackensack, NJ, Sheldon H. Parker, Parker & De Stefano, Charlottesville, VA, for Plaintiff.

Peter J. Torcicollo, Crummy, Del Deo, Dolan, Griffinger, & Vecchione, Newark, NJ, Gregory D. Phillips, Johnson & Hatch, Salt Lake, UT, for Defendants.

### OPINION

BARRY, District Judge.

This matter comes before the court on the application of defendants, Dr. Ing. h.c.F. Porsche AG ("Porsche AG") and Porsche Cars North America, Inc. ("Porsche Cars N.A.") (collectively as "Porsche") for a preliminary injunction to enjoin plaintiff Liquid Glass Enterprises, Inc. ("Liquid Glass") from infringing and diluting Porsche's trademarks and trade dress. For the reasons which follow, a preliminary injunction will issue.

### I.

Liquid Glass is a New Jersey corporation which sells car care products, primarily car cleaners and polishes. Compl. at ¶¶ 4,7. Porsche AG is a German company which has manufactured motor vehicles, parts and accessories since 1952. Verif. Countercl. at ¶ 3. Porsche Cars N.A. is a Delaware corporation with exclusive authority to import and sell Porsche vehicles and related products in the United States. *Id.* at ¶ 2.

Porsche AG owns registered trademarks for the underlined word PORSCHE (stylized) for use with automobiles and parts, for the stylized word PORSCHE on various products, and for the Porsche crest. *Id.* at Exh. A. Porsche contends that it also holds ownership rights in the distinctive shape or trade dress of certain Porsche automobiles, namely the Porsche 911, 356 and 959. *Id.* at ¶ 7–8; Exh. F.

At issue in this case is Liquid Glass's use of the Porsche trademarks and trade dress in its advertisements for car polish. Porsche has submitted two examples of allegedly infringing and diluting Liquid Glass advertisements, namely, an ad appearing in the May 1997 issue of a national car magazine, *Motor Trend,* which portrays a provocatively-dressed woman applying Liquid Glass car polish to a Porsche 911 with the trademark "PORSCHE" prominently displayed on the car (*Id.* at Exh. B), and a ten-minute video

for use at trade shows. *Id.* at Exh. D. The video opens with a Porsche 911 (with the Porsche crest plainly visible) accelerating down a highway. Immediately following, the video cuts to a woman who is undressing and taking a shower. Thereafter, the video cuts alternately between a car (not a Porsche) being washed and polished and a woman showering, putting on her makeup and getting dressed. The video then illustrates Liquid Glass's uses on numerous expensive cars and ends with a shot of the Porsche 911 speeding down the road.[1]

Porsche first became aware in 1991 that Liquid Glass was running advertisements using a Porsche 911. Verif. Countercl. at ¶ 19. On December 2, 1991, a cease and desist letter was sent to Liquid Glass, objecting to its unauthorized use of the Porsche trademarks and trade dress. Porsche Reply Mem. at Exh. A. No further unauthorized uses were detected until the July 1993 issue of *Road & Track* included a Liquid Glass advertisement picturing a provocatively-clad woman polishing a Porsche 911. Again, Porsche responded with a cease and desist letter, further admonishing that "the tenor of this advertisement is not consistent with Porsche policy; we find the suggestion that Porsche cars condones this advertising approach objectionable." June 11, 1993 Letter, *Id.* at Exh. B. In response, Liquid Glass asserted that the Porsche depicted in the advertisement belonged to the President of Liquid Glass and, therefore, its use was "fair usage and not Trademark or TradeDress infringement." June 24, 1993 Letter, *Id.* at Exh. C. Nonetheless, Liquid Glass offered to update the advertisement with a disclaimer that Porsche and Liquid Glass were affiliated in any way. *Id.* Porsche disagreed that a disclaimer was sufficient, or that use of an individual's privately owned automobile in an advertisement constituted "fair use." July 2, 1993 Letter, *Id.* at Exh. D. Apparently understanding the matter to be resolved, however, no further correspondence between the parties occurred until 1996.

In October 1996, Porsche discovered another Liquid Glass advertisement in *Motor Trend* depicting the Porsche 911 and using the Porsche trademarks and trade dress. Verif. Countercl. at ¶ 20. Porsche sent cease and desist letters to Liquid Glass on December 19, 1996 and February 24, 1997 stating that if such unauthorized usage continued, "Porsche Cars N.A. will be compelled to pursue its legal remedies." *Id.*, Exhs. F, G. Liquid Glass did not respond to either letter and Porsche informed Liquid Glass by letter of June 24, 1997 that its advertisements were willful violations of the trademark laws. Porsche again requested that Liquid Glass cease and desist, threatening a lawsuit if it did not do so. *Id.* at Exh. H. On July 16, 1997, Liquid Glass responded that it would immediately stop featuring any Porsche in its national advertising campaign, but that the 5,000 sales sheets which depict the Porsche would continue to be used until they were exhausted by year's end. *Id.* at Exh. I. Porsche replied that the continued use of the 5,000 sales sheets was unacceptable, and supplied Liquid Glass with a copy of a Verified Complaint which it was prepared to file if Liquid Glass did not discontinue use of the sales sheets immediately. August 8, 1997 Letter, *Id.* at Exh. J.

Liquid Glass responded, without conceding liability, that it would discontinue the advertisements but that it could not guarantee that the sales sheets which had been circulated would not appear in the market in the future. *Id.* at Exh. K. In addition, Liquid Glass voiced concerns about the costs associated with reshooting the video used in trade shows, suggesting that either a disclaimer be added or the video be reshot at Porsche's expense. *Id.* Porsche immediately requested a copy of the video. August 12, 1997 Letter, Porsche Reply Mem. at Exh. E. After view-

---

1. Porsche asserts that the May 1997 *Motor Trend* advertisement is but one example of Liquid Glass's infringing ads (Porsche Mem. in Support of Motion for Prelim. Inj. at n. 1) and that such advertisements repeatedly appear in nationally distributed car magazines such as *Road & Track* and *Motor Trend. Id.* at 5. Furthermore, Porsche refers to "sales sheets" which contain the same purportedly improper material; examples of such sheets were not, however, supplied to this court. *Id.* at 1. Assuming that the sales sheets and any other magazine advertisements contain the same depictions as the May 1997 *Motor Trend* advertisement, this opinion will apply with equal force to each of them.

ing the video, Porsche objected to its use of the Porsche automobile and Porsche crest, refused to pay for a reshooting, and disagreed that a disclaimer would be sufficient. August 20, 1997 Letter, Verif. Countercl. at Exh. L. Porsche demanded that use of the video be discontinued, that Liquid Glass cease distributing the sales sheets, and that it "take all reasonable steps to recall undistributed advertisements from its retailers who may have quantities on hand. . . ." *Id.*

Porsche also enclosed a proposed settlement agreement for Liquid Glass's signature. *Id.* Liquid Glass refused to sign the agreement unless it was modified to include a release of liability. September 16, 1997 Letter, *Id.* at Exh. M. Porsche revised the settlement agreement, as agreed upon by the parties in a telephone conference, to include a disclaimer of liability as to Liquid Glass's past advertisements and resubmitted it to Liquid Glass on ·September 18, 1997. *Id.*, Exh. N at ¶ 3. Having received no response, Porsche followed up on October 7, 1997, stating that if the settlement agreement was not executed by October 13, 1997, Porsche would take "appropriate action." *Id.* at Exh. O.

On October 9, 1997, Liquid Glass rejected the settlement agreement as "overreaching." *Id.* at Exh. P. Porsche then informed Liquid Glass that any alternative language or provisions would be welcome, but if no agreement was reached by October 17, 1997, the complaint would be filed. *Id.* at Exh. Q. Liquid Glass, stating that it was "still hopeful that this matter [could] be resolved without having to resort to a Court deciding this matter for us," but meanwhile having filed the instant action for a declaratory judgment just three days earlier, responded on October 17, 1997 that it would be willing to draft a settlement agreement with appropriate language. *Id.* at Exh. R. On October 29, 1997, it informed Porsche that it had "ceased using and distributing any advertisements, [or] sales sheets that portray Porsche marks" and that it was "in the process of phasing out the use of the video." *Id.* at Exh. S. On November 3, 1997, however, Liquid Glass told Porsche that while it "had already pulled all ads which show a Porsche mark or automobile," the sales sheets would not be replaced until a

new ad was produced ("by the end of this year, at the latest"), and a "few dozen copies" of the video would be distributed to the general public in 1998. *Id.* at Exh. T. On January 6, 1998, Porsche informed Liquid Glass that the matter was not resolved because the video was still being used, no confirmation was provided that the sales sheets were definitely discontinued, and a settlement agreement had not yet been signed. *Id.* at Exh. W.

On January 13, 1998, Liquid Glass served Porsche with the complaint in this action. Liquid Glass seeks declaratory judgment of non-infringement or dilution, and asserts claims for tortious interference with current and prospective advertisers, tortious interference with current and future sales, lack of consumer confusion and "discrimination." Porsche filed a counterclaim alleging trademark and trade dress dilution under Section 43(c) of the Lanham Act, trademark infringement under Section 32(*l* ), false designation of origin or sponsorship and trade dress infringement under Section 43(a), as well as a claim for common law trademark infringement. Porsche now petitions this court to preliminarily enjoin the allegedly infringing and diluting Liquid Glass advertisements and video.

## II.

█ A preliminary injunction may be granted if the moving party demonstrates that it is likely to succeed on the merits and, in the absence of an injunction, it will be irreparably harmed. Furthermore, the court should consider the harm to the party to be enjoined and, if appropriate, the public interest. *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187, 191–92 (3d Cir.1990).

### A. *Probability of Success*

This court finds that Porsche is likely to prevail on the merits of its counterclaim. To prevail on a claim of trademark infringement under Section 32(*l* ) of the Lanham Act, Porsche must show that Liquid Glass (1) used in commerce any reproduction or copy of a "registered mark" in connection with the advertising of any goods (2) which is "likely

to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(*l*)(a). The elements of trade dress infringement under Section 43(a) of the Lanham Act are similar: in terms of this case, the shape of the automobile must be distinctive (defined as either inherently distinctive or having acquired distinctiveness through secondary meaning), non-functional and a likelihood of confusion must .exist from its use by Liquid Glass. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). And, finally, a claim for false designation of origin or sponsorship requires Porsche to show that Liquid Glass (1) used in commerce any false designation of origin which is (2) likely to cause confusion, mistake or deception as to the "affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person[.]" 15 U.S.C. 1125(a)(1)(A).

█ Liquid Glass does not dispute that Porsche has a registered trademark in its crest and the stylized word PORSCHE, as well as a protectable trade dress in the Porsche 911.[2] Nor does it dispute that it used Porsche's registered trademark and trade dress in its national advertisements. *See* Pl. Opp. Br. at 17 ("All uses of Porsche trademarks and tradedress are authentic."). Instead, Liquid Glass asserts a fair use defense, arguing that the President of Liquid Glass has a right to use his privately owned Porsche to advertise his company's car polish. *Id.* Liquid Glass is wrong.

The fair use doctrine does not apply because protected marks can only be fairly used in limited circumstances. Here, where Liquid Glass used Porsche's trademark and trade dress to describe Porsche's product, rather than its own, fair use can only be successfully invoked if (1) "the product or service in question [is] one not readily identifiable without use of the trademark;" (2)

"only so much of the mark or marks [is] used as is reasonably necessary to identify the product or service;" and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302, 308 (9th Cir.1992). Liquid Glass fails in all three respects.

First, there is no indication that the Liquid Glass products would not be readily identifiable in the advertisements without use of the Porsche trademarks or trade dress. Unlike the defendant newspapers in *New Kids,* which had to use the New Kids on the Block trademark in order to run its phone-in contest as to who was the favorite New Kid, *Id.* at 308, or the·defendant automobile repair shop in *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350, 352 (9th Cir.1969), which could not avoid using the word Volkswagen in describing the type of cars repaired in the shop, *Id.,* Liquid Glass has asserted no reason why the Porsche trademark or trade dress is necessary in its promotion of Liquid Glass products. While it is certainly true that to advertise a car cleaner or polish,·one may wish to demonstrate its use on an automobile, nothing mandates that Liquid Glass use an automobile with a protectable trade dress, or prominently display Porsche's trademarks in the ads. The reason that Liquid Glass chose to use a Porsche, instead of the vast array of other cars, and chose to clearly display the trademark PORSCHE, was not, in this court's opinion, because it needed a mere prop, but because Liquid Glass wanted to usurp Porsche's reputation and strength and persuade consumers that Liquid Glass produces high quality products. Stated somewhat differently, Liquid Glass wanted to cash in on the good will that Porsche has worked hard to create and maintain by aligning itself with Porsche.

Neither does Liquid Glass use only so much of Porsche's trademarks and trade

---

**2.** While Liquid Glass alludes to a functionality argument in stating that requiring approval from Porsche would be tantamount to requiring advertisers of kitchen cleaning products to obtain approval from appliance manufacturers and floor wax producers to obtain approval from floor manufacturers (Pl. Opp. Br. at 6), it never direct-

ly disputes the fact that the Porsche 911 is afforded trade dress protection; indeed, Liquid Glass frequently refers to Porsche's trade dress without qualification. *Id.* at 3 ("[Liquid Glass] acknowledges Porsche's efforts in securing and defending their marks and trade dress."), 17, 23. This court need not further address the issue.

dress as is reasonably necessary. *See, e.g., Id.* (repair shop can only use the word "Volkswagen" but cannot use the distinctive lettering or the encircled "VW" emblem). Nothing at all which this court can see necessitates Liquid Glass's use of the Porsche trademark or trade dress, and even if Liquid Glass were to convince this court that Porsche's distinctive red color was somehow vital to illustrate the shine achieved when using Liquid Glass products, a side panel of the Porsche could have been used without revealing that the car was a Porsche 911.

Finally, and most importantly in both defeating Liquid Glass's fair use defense and establishing Porsche's infringement and false designation claims, this court finds that Porsche will likely prevail in demonstrating that the use of Porsche's trademarks and trade dress in Liquid Glass's advertisements would likely confuse consumers as to Porsche's connection with Liquid Glass. The Third Circuit has set forth a non-exclusive list of factors which a court may consider in determining likelihood of confusion:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time defendant has used the mark without actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competitive, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sale efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

*Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 293 (3d Cir.)(citing *Scott Paper Co. v. Scott's Liquid Gold,* Inc., 589 F.2d 1225, 1229 (3d Cir.1978)), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). No single factor is determinative and not all are appropriate in every case. *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.,* 50 F.3d 189, 202 (3d Cir.1995), *cert. denied,* 516 U.S. 808, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995).

■ In terms of strength and similarity, Liquid Glass concedes that it used Porsche's trademarks and trade dress in its advertisements, knowing full well that those marks are "strong" and have developed "distinct recognition." Pl. Opp. Br. at 21. The relative inexpensiveness of car cleaning products also weighs in Porsche's favor because consumers would not be likely to use much care or pay much attention before purchasing them. In glancing at the advertisement in which a Porsche automobile—complete with the trademarked word PORSCHE as the central focus of the ad—fills almost the entire page, consumers may well think—just as Liquid Glass hopes they will—that "if Porsche backs this polish, it'll be great on my car." Moving to intent, there is no question as to Liquid Glass's intent in adopting the Porsche marks: Liquid Glass was trying to attract customers by capitalizing on Porsche's good will and reputation for quality products. Although no evidence of actual confusion has been provided to this court, proof of actual confusion, while helpful if it exists, is not necessary. *Opticians Ass'n of America,* 920 F.2d at 195; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 875 (2d Cir.1986)("it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act only requires likelihood of confusion...."). Furthermore, the advertisements appear in national automotive magazines—a marketing channel used by both Porsche and Liquid Glass—and both do business in the automotive field. Moreover, the targets of their sales efforts are similar for, in addition to automobiles, Porsche sells car care products such as cleaners and polishes, products identical to those sold by Liquid Glass.[3] Verif. Countercl., Exh. E.

---

**3.** This court rejects Liquid Glass's argument that

although "Porsche and [Liquid Glass] are in the

After weighing the relevant factors, this court finds that Liquid Glass's advertisements could mislead the public into believing that Porsche endorsed Liquid Glass's products or at least approved of their use on Porsche automobiles. Porsche is likely to succeed on its infringement and false designation claims and Liquid Glass's defense of fair use must fail.[4]

In addition to its infringement and false designation claims, Porsche also alleges a dilution claim against Liquid Glass. Dilution refers to the "lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of—(1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127. To prevail on its claim of dilution, Porsche need only show that its marks are "famous" and that Liquid Glass's use of the Porsche trademarks and trade dress is likely to cause dilution. 15 U.S.C. § 1125(c)(1); *Genovese Drug Stores, Inc. v. TGC Stores, Inc.,* 939 F.Supp. 340, 349

(D.N.J.1996). Because Liquid Glass does not dispute that Porsche's marks are famous— the more difficult determination in the two-prong test—Porsche must only show that the advertisements in question diluted or blurred the value of its marks.

Without addressing Porsche's dilution claim directly, Liquid Glass seems to argue that dilution would not occur because Porsche's image would not be disparaged or tarnished by either what Liquid Glass believes to be tasteful magazine ads or the video, which, while containing scenes of a naked woman taking a shower, is supposedly so discreet that it could only be deemed "PG-13 or PG." Pl. Opp. Br. at 16. This court need not reach the issue of whether Liquid Glass's advertisements either in print or on video are sufficiently tasteless or degrading such that Porsche would suffer negative associations through Liquid Glass's use of them, *see Hormel Foods Corp. v. Jim Henson Prods. Inc.,* 73 F.3d 497, 507 (2d Cir.1996), because dilution can be established

---

same marketplace with potentially competitive products" (Pl. Opp. Br. at 21), no confusion would ensue because the products are sold in different distribution channels. *Id.* Liquid Glass argues that Porsche only sells its car cleaning products to Porsche distributors who in turn would provide the products to Porsche owners. *Id.* Therefore, the argument goes, a consumer who does not own a Porsche would not be aware that Porsche even produces car cleaning products.

This argument cuts two ways. The same individuals who are not aware that Porsche sells car care products would more likely be confused into thinking that Porsche either produced the Liquid Glass products or at least endorsed their use. In addition, even if Porsche did not produce car care products, there would be enough relatedness of the goods and marketing channels—with respect to Porsche's cars and Liquid Glass's car polish—that consumer confusion could ensue.

4. Liquid Glass argues that no consumer would be confused or deceived into thinking that Liquid Glass products were produced by Porsche because a red Corvette—not a Porsche or Porsche logo—is displayed on the label of the Liquid Glass polish bottle. Pl. Opp. Br. at 5, 7, 8, 23.

The allegedly infringing advertisements, however, which are what is at issue here, focus primarily on a Porsche, with only a small illustration of Liquid Glass products in the lower right-hand corner. *See* Verif. Countercl. at Exh. B. Analysis of consumer confusion may be based

upon initial confusion, not necessarily whether, after closer examination, the consumer would likely figure out that Liquid Glass is a separate company. *See Ferrari S.p.A. Esercizio Fabriche Automobili E Corse v. Roberts,* 944 F.2d 1235, 1245 (6th Cir.1991)(Lanham Act intended to do more than protect consumers at the point of sale), *cert. denied,* 505 U.S. 1219, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 260 (2d Cir. 1987) (likelihood that "potential purchasers would be misled into an initial interest" justifies finding of infringement); *Clinique Laboratories, Inc. v. Dep Corp.,* 945 F.Supp. 547, 551 (S.D.N.Y. 1996)("a court may find infringement has occurred based on confusion that creates initial customer interest, even if no final sale is completed as a result"). Therefore, based on the prominence of the Porsche car in the advertisements, a consumer, casually flipping through magazines which carry them, may well be initially confused as to whether Porsche, or its subsidiaries, produces Liquid Glass polishes.

Even if consumers would not be confused as to source, confusion as to sponsorship or endorsement is likely and, therefore, Porsche will likely prevail on its claims for infringement and false designation. *See Dr. Ing. h.c.F. Porsche AG v. Universal Brass, Inc.,* 34 U.S.P.Q.2d 1593, 1595–96 (W.D.Wash.1995)(finding that even if no confusion as to source, party entitled to summary judgment as to trademark infringement and false designation of origin if confusion as to sponsorship established).

independent of disparagement or tarnishment.

Dilution may occur when subsequent uses blur the distinctiveness of the mark, regardless of whether the use is degrading. *See Illinois High School Ass'n v. GTE Vantage, Inc.*, 99 F.3d 244, 247 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997). For many years, Porsche has endeavored to maintain its good will and reputation for producing high quality products catering to an exclusive market of automobile consumers. Liquid Glass's unauthorized use of Porsche's trademarks and trade dress is likely to slowly whittle away the distinctiveness of Porsche's marks, demeaning the Porsche cachet and blurring the value of its famous and strong marks. *See Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 844 (D.Mass.1964)(finding dilution under state law because trademark for "Tiffany" jewelers "is universally used as a symbol of quality by the public" and use of the mark by Tiffany restaurant may erode "the public's identification of this very strong mark with the plaintiff alone, thus diminishing its distinctiveness, uniqueness, effectiveness, and prestigious connotations..."). Although Liquid Glass is a "comparatively small company" (Pl. Opp. Br. at 25), "the theory of dilution by blurring is that if one small user can blur the sharp focus of the famous mark to uniquely identify one source, then another and another small user can and will do so." McCarthy, McCarthy on Trademarks and Unfair Competition, § 24.94 at 24–161 (4th Ed.1997).

Finally, Liquid Glass's fair use defense to Porsche's dilution claims would likewise fail. Fair use may be a defense to a dilution claim only in three settings: namely, comparative advertising, noncommercial uses and news reporting or commentary. 15 U.S.C. § 1125(c)(4). The commercial advertisements in question here do not fall into any of those categories and Liquid Glass's fair use defense, again, must fail.[5]

This court also rejects Liquid Glass's argument that Porsche's counterclaim is barred by the doctrine of laches. Liquid Glass asserts that Porsche was aware that Liquid Glass was using Porsche marks in its advertisements as early as 1991 and failed to bring suit until now. Neither of the elements of laches has been met. Laches is an equitable defense which is left to the discretion of the district court. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed.Cir.1992). To invoke the defense, Liquid Glass must demonstrate inexcusable delay on the part of Porsche and that this delay prejudiced Liquid Glass. *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *United States v. Koreh*, 59 F.3d 431, 445 (3d Cir. 1995); *Lasseigne v. Nigerian Gulf Oil Co.*, 397 F.Supp. 465, 473 (D.Del.1975).

Any delay by Porsche in filing suit was completely excusable. Porsche diligently enforced its rights to the mark, immediately writing to Liquid Glass when it became aware of the improper advertisements and

---

**5.** Liquid Glass asserts that affixing a disclaimer that Porsche is not affiliated with Liquid Glass products to all advertisements with any reference to Porsche would eradicate any likelihood of confusion. Pl. Opp. Br. at 18.

Disclaimers have frequently been found to be insufficient to avoid consumer confusion in the marketplace. *See, e.g., International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1093 (7th Cir.1988)("we are convinced that plaintiff's reputation and goodwill should not be rendered forever dependent on the effectiveness of fineprint disclaimers often ignored by consumers"); *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 142 (3d Cir.1981). Indeed, courts are so skeptical about the effectiveness of disclaimers that the burden has been shifted from the mark owner to show how a disclaimer would not prevent confusion, to the

infringer to show that the disclaimer would prevent confusion. *Home Box Office, Inc. v. Showtime/Movie Channel, Inc.*, 832 F.2d 1311, 1315–16 (2d Cir.1987)(noting that disclaimers using brief negator words such as "no" or "not" are not generally effective in preventing confusion). Furthermore, disclaimers will never remedy dilution because consumer confusion is irrelevant in establishing a dilution claim. *See* 15 U.S.C. § 1127.

It is unlikely that a disclaimer either at the beginning of the video or in the corner of a magazine advertisement would cure the likelihood of consumer confusion. In any event, on a motion for a preliminary injunction, this court need not reach what Liquid Glass could do to alter its video and its ads, but must simply examine whether what is presented is likely to be infringing or diluting.

requesting that Liquid Glass discontinue using the marks. *See E–Systems, Inc. v. Monitek, Inc.,* 720 F.2d 604, 607 (9th Cir.1983)(noting that mark owner's diligence in enforcing the mark and good faith ignorance by the junior user are two factors which can be considered in evaluating a laches defense to a trademark suit). Cease and desist letters were repeatedly sent to Liquid Glass and were met with responses representing that the matter could be settled amicably. Several settlement agreements proposed by Porsche were, however, shot down by Liquid Glass. Vague objections to proposed agreements, coupled by Liquid Glass's failure to provide alternate provisions or language, as well as false assurances that certain advertisements would be or even were discontinued, resulted in prolonged settlement negotiations. Contrary to Liquid Glass's assertion that "[t]here is no plausible excuse on the part of Porsche for why they delayed bringing the present action for over seven (7) years" (Pl. Opp. Br. at 12), this court finds that the delay was the result of Porsche's consistent efforts toward settlement while Liquid Glass was playing somewhat fast and loose, as opposed to Porsche "sleeping on its rights." *See Universal Brass Inc.,* 34 U.S.P.Q.2d at 1596 (noting a strong public policy in favor of settlements in rejecting laches defense to a claim brought over 10 years after the first infringing use because plaintiff diligently enforced its mark and sent numerous cease and desist letters to defendant).

Finally, there has been no prejudice to Liquid Glass as a result of any delay. If anything, Liquid Glass has benefitted from its continued use of Porsche's trademarks and trade dress over the years.

### B. *Irreparable Harm*

Porsche has also established that it will be irreparably harmed if an injunction does not issue. Liquid Glass asserts that Porsche was not irreparably harmed because "it is difficult to believe that Porsche has lost any car sales due to the advertisements" (Pl. Opp. Br. at 24) and that Porsche will not be harmed because it is receiving "an indefinite benefit" from the free "favorable advertis-

ing." Pl. Opp. Br. at 16. Because Liquid Glass "used one of the personal cars of the President of Liquid Glass to show the beauty which can be achieved when Liquid Glass is applied to an automobile[,] Porsche should be flattered by the advertisements and videos produced by the Plaintiff." Pl. Opp. Br. at 20. Although it has been said that "imitation is the sincerest form of flattery," it is equally true, especially in the context of trademark litigation, that "flattery will often get you nowhere." *Bausch & Lomb Inc. v. Nevitt Sales Corp.,* 810 F.Supp. 466, 468 (W.D.N.Y.1993)(citing to Charles C. Cotton, 1 Lacon, No. 183 (1820–22), quoted in Bartlett's Familiar Quotations at 393:5 (Justin Kaplan ed., 16th ed.1992)).

In the context of trademark litigation, "grounds for irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill," regardless of whether the infringer is putting the mark to a good or favorable use. *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 378 (3d Cir.1992)(citing to *Opticians Ass'n of America,* 920 F.2d at 195). Liquid Glass's unauthorized use of the Porsche marks inhibits Porsche's ability to control which products its reputation and good will are being used to promote or endorse. This lack of control and potential damage to Porsche's reputation constitutes irreparable injury because monetary damages cannot adequately compensate for harm to good will or reputation. *Opticians Ass'n of America,* 920 F.2d at 196 ("a plaintiff's mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use...")(quoting *Ambassador East, Inc. v. Orsatti, Inc.,* 257 F.2d 79, 82 (3d Cir.1958)). Furthermore, irreparable injury is established by a finding of likelihood of confusion. *Id.; Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 41 (2d Cir.1986)("high probability of confusion as to sponsorship almost inevitably establishes irreparable harm").

Because this court has found that Porsche will likely prevail on the merits of its infringement and dilution claims, irreparable harm is established. *See Opticians Ass'n of America,* 920 F.2d at 196; *Dr. Seuss Enterprises, L.P., v. Penguin Books USA, Inc.,* 924 F.Supp. 1559, 1574 (S.D.Cal.1996)(irreparable injury in a trademark case is presumed upon a showing of likelihood of success), *aff'd,* 109 F.3d 1394 (9th Cir.1997), *cert. dismissed,* ⸺ U.S. ⸺, 118 S.Ct. 27, 138 L.Ed.2d 1057 (1997).

## C. *Balancing the Hardships and Public Interest*

 The relative harm to Liquid Glass from an injunction is minimal. Liquid Glass can still sell its products, packaged in exactly the same way, but would simply have to advertise using a different car. Liquid Glass even admits, although somewhat disingenuously in this court's view, that "[t]he use of the Porsche over another personally owned automobile is inconsequential to [Liquid Glass] ...." Pl. Op. Br. at 23. Editing the video to cut out the beginning and ending segments portraying a Porsche 911 speeding down the highway, contrary to Liquid Glass's assertions, will be inexpensive and will not disrupt the sacred "story-line" of the video.

Furthermore, public interest, in a trademark case, is defined as "the right of the public not to be deceived or confused." *Opticians Ass'n of America,* 920 F.2d at 197. Here, the public would be well served by a preliminary injunction.[6]

## III.

For the above reasons, the four requirements for a preliminary injunction have been established by Porsche and a preliminary injunction will be granted. An appropriate order shall issue.

**6.** This court also rejects out of hand Liquid Glass's unsupported argument that because Porsche offered to settle the matter in *Porsche Cars North America, Inc. v. Manny's Porshop, Inc.,* 972 F.Supp. 1128, 43 U.S.P.Q.2d 1475, 1476 (N.D.Ill.1997), by paying for the expenses incurred in changing the name of the business, Porsche should reimburse Liquid Glass for the cost of reshooting the video. Pl. Opp. Br. at 19. Moreover, Liquid Glass's proclamation that Porsche is "reprehensible" for resolving this matter through litigation instead of through settlement (*Id.* at 19) also rings hollow in light of Liquid Glass's statement that it has spent millions of dollars in bringing numerous lawsuits defending its own trademarks and trade dress throughout the country. *Id.* at 8, Exh. 1. And, of course, it was not Porsche who filed this action but Liquid Glass which, even while mouthing its interest in settlement, filed suit behind Porsche's back.

## ORDER

This matter having come before the court on defendants' motion for a preliminary injunction; and the court having considered the parties' submissions without oral argument pursuant to Fed.R.Civ.P. 78; and consistent with this court's opinion of even date;

IT IS on this 30th day of March, 1998,

ORDERED that a preliminary injunction be and hereby is granted in favor of defendants and that plaintiff Liquid Glass Enterprises, Inc. be and hereby is restrained and enjoined from:

a) imitating, copying or making unauthorized use of any of the Porsche trademarks or Porsche trade dress;

b) using any simulation, reproduction, counterfeit, copy or colorable imitation of the Porsche marks or Porsche trade dress in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product, in such fashion as to relate or connect, or tend to relate or connect, such product in any way to Porsche, or to any goods sold, manufactured, sponsored or approved by, or connected with, Porsche;

c) using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any product manufactured, distributed or sold by Liquid Glass is in any manner associated or connected with Porsche, or is sold, manufactured, licensed, sponsored, approved or authorized by Porsche;

d) transferring, consigning, selling, shipping or otherwise moving any goods, packag-

**408**

ing or other materials in Liquid Glass's possession, custody or control bearing a design or mark substantially identical to any or all of the Porsche marks or Porsche trade dress;

e) engaging in any other activity constituting unfair competition with Porsche, or constituting an infringement of any or all of the Porsche marks, or of Porsche's rights in, or to use or exploit, any or all of the Porsche marks or Porsche trade dress; and

f) instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above; and it is further

ORDERED that Liquid Glass shall deliver to defendants for destruction all products, labels, tags, signs, prints, packages, videos and advertisements in the possession or control of Liquid Glass which bear any or all of the Porsche marks or Porsche trade dress or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118; and it is further

ORDERED that defendants shall post a bond in the amount of $10,000.00 within seven days of the date of this order.