**BIJUR LUBRICATING CORPORATION, Plaintiff/Counter Defendant,**

v.

**DEVCO CORPORATION, William E. Durnan, Jr., Defendants/Counter Plaintiffs.**

**Civ. No. 00–5157 (WHW).**

United States District Court, D. New Jersey.

Aug. 26, 2004.

Carol Ann Slocum, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Cherry Hill, NJ, for Plaintiff/Counter Defendant.

Peter J. Kurshan, Chase, Kurshan, Herzfeld & Rubin, LLC, Livingston, NJ, for Defendants/Counter Plaintiffs.

## OPINION

WALLS, District Judge.

Defendants Devco Corp. ("Devco") and William E. Durnan, Jr., bring this Motion for Summary Judgment. The Motion is granted.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff Bijur Lubricating Corp. ("Bijur") filed its Complaint in October 2000, alleging trademark infringement, unfair competition, dilution, and unjust enrichment against Defendants.[1] Bijur designs, manufactures, and sells lubricating systems and replacement parts for those systems. Devco competes with Bijur in the sale of lubricating parts, components, and services, and was founded in the 1980s by Durnan, a former Bijur employee.

Bijur's claims arise from Devco's promotion and sale through its website of replacement parts for Bijur lubricating systems. Bijur alleges that Devco has used Bijur's registered trademarks and service marks (the "Marks") misleadingly to sell products manufactured by a competitor of Bijur, Showa–Yuki ("Showa"). Bijur also claims that Devco's use of the Marks on the website is misleading because Internet users may believe that Devco is associated with Bijur or that Devco's products and services are sponsored or endorsed by Bijur. Devco insists that its use of the Marks is lawful. Devco does not dispute the validity of the Marks, which consist of the name "Bijur" and stylized variations thereof.

---

1. In August 2003, Defendants filed counterclaims alleging, inter alia, product disparagement, defamation, violation of section 43(a) of the Lanham Act, and deceptive business practices.

Bijur's claims arise in part from Devco's use of the name "Bijur" in the website's "metatags." A metatag is "a list of words normally hidden in a web site that acts as an index or reference source identifying the content of the web site for search engines." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:69 (4th ed. June 2004) (hereinafter *"McCarthy on Trademarks"*). At the time the Complaint was filed, the Devco website metatags included the following:

> *title metatag:* bijur replacement lubrication parts by Devco
>
> *description metatag:* Bijur replacement automatic lubricating system/parts by Devco
>
> *keyword metatags:* bijur, Bijur replacement lubricating systems ... Bijur, NJ bijur, New Jersey bijur, N.Y. bijur

(*See* Sweeney Certif. Ex. H–2.)

Internet searches run through various search engines using the keywords "Bijur," "bijur," or "bijur.com" would return result lists that included a Devco webpage under the title "bijur replacement lubrication parts by Devco." (*See id.* Ex. G.) Customers who clicked on the Devco result would be taken to a webpage at http://www.devcocorp.com/bijur.html with the words "Bijur Replacement Parts" displayed near the top. (*See id.* Ex. H–1.) In contrast, customers who searched for "Devco" or who used Devco's primary Internet address were taken to a webpage at http://www.devcocorp.com/index.html that appeared identical to the first webpage except that it displayed the words "Devco—Showa" instead. (*See id.* Ex. E.) Both webpages also provided Devco's contact information and contained the following language: "Lubricating systems & components for machinery maintenance— DEVCO, SHOWA, BIJUR, LUBE, WILLY VOGEL & others—Original Equipment & Replacement Parts." (*See id.* Exs. E & H–1.)

Bijur alleges that none of the products advertised for sale on the Devco website were manufactured by Bijur. When customers searched for specific parts on the website, they were presented with tabular lists of parts. (*See id.* Ex. I.) Bijur alleges that the parts advertised in these tables were manufactured by Showa as replacements for Bijur parts and given a Devco model number. The leftmost column of each table contained a Devco model number and was captioned "DEVCO" or "DEVCO Model Type." The rightmost column contained the corresponding Bijur model number and was captioned "(Replaces Bijur)" or "(Replaces Bijur Type)." Nowhere in these tables was Showa identified as the manufacturer. Bijur's marketing manager, Peter M. Sweeney, asserts that Devco "apparently only sells products manufactured by Bijur and other Showa competitors if Showa does not make the part required by the customer or if the customer demands the products of a specific manufacturer." (*Id.* 19.)

Devco claims that it does sell Bijur-manufactured parts, in addition to those of Showa and other manufacturers, through the website. Durnan denies that Devco used the "Bijur" name to sell Showa products, claiming that "this is not commercially feasible as only a small part of the Showa and Bijur product lines overlap." (Durnan Decl. 8.) Rather, "[t]he name 'Bijur' was used to designate that genuine Bijur parts were sold by Devco, or that Bijur parts were compatible with other products sold by Devco." (*Id.* 12.) In their briefs, however, Defendants admit that the words "Replaces Bijur" were used to sell replacement parts that were not manufactured by Bijur. They argue that such use was permissible because the headings "DEVCO" and "(Replaces Bijur)"

on the tabular lists of parts sufficiently alerted consumers that those products were not manufactured by Bijur. (*See* Reply Br. at 12.) Defendants do not dispute Sweeney's characterization that Devco only sells Bijur and other non-Showa parts if Showa does not make the part or if the customer requests a specific manufacturer. (*See id.* at 4.) Defendants also maintain that the website clearly and accurately identified the various product lines sold by the company and did not suggest that Devco had any affiliation with Bijur.

Bijur's claims for relief are based on trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), (Count II); common law service mark infringement (Count III); common law unfair competition (Count IV); unfair competition under N.J. Stat. Ann. § 56:4–1 (Count V); dilution under 15 U.S.C. § 1125(c) (Count VI); dilution under N.J. Stat. Ann. § 56:3–13.20 (Count VII); and unjust enrichment (Count VIII). Bijur requests damages and a permanent injunction barring Defendants from any use of Bijur's name and registered marks in any medium. In November 2000, the parties consented to the entry of a preliminary injunction that prevents Devco from using "Bijur Replacements" or "Bijur Replacement Parts" as a caption on the website and prevents it from using certain metagags that include the word "Bijur."

Defendants now move for summary judgment on Plaintiff's claims.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See id.* at 248, 106 S.Ct. 2505. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.2001). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir.2002).

## DISCUSSION

### *Trademark Infringement/Unfair Competition*

■ The law governing trademark infringement under section 43(a) of the Lanham Act, which protects unregistered

trademarks, generally follows the law governing infringement of registered trademarks, which are protected under section 32. *Island Insteel Sys., Inc. v. Waters,* 296 F.3d 200, 206 n. 1 (3d Cir.2002). Moreover, "in the Third Circuit the test for common law infringement and unfair competition is identical to the test for federal infringement and unfair competition." *Pharmacia Corp. v. Alcon Laboratories, Inc.,* 201 F.Supp.2d 335, 386 (D.N.J.2002); *World Wrestling Fed'n Entm't Inc. v. Big Dog Holdings, Inc.,* 280 F.Supp.2d 413, 446 (W.D.Pa.2003); *see American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1433 (3d Cir. 1994) (unfair competition). "Similarly, New Jersey's statutory unfair competition law, N.J.S.A. 56:4–1, is equivalent to Section 43(a) of the Lanham Act." *Pharmacia Corp.,* 201 F.Supp.2d at 386 (citations omitted). The following legal analysis therefore applies to Counts I through V of the Complaint.

■ "To prevail on a claim for trademark infringement or unfair competition under the Lanham Act, the owner of a valid and legally protectable mark ... must show that a defendant's use of a similar mark for its goods 'causes a likelihood of confusion.'" *KOS Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 708–09 (3d Cir.2004).[2] Here, it is undisputed that Bijur owns the Marks and that they are valid. The determinative issue is whether Devco's use of the Marks causes a likelihood of confusion.

■ Likelihood of confusion is a question of fact. *See Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,* 269 F.3d 270, 301 (3d Cir.2001) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 237 (3d Cir. 2000)). "To prove likelihood of confusion, plaintiffs must show that 'consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *Id.* at 280.

■ The Third Circuit has adopted a nonexhaustive list of factors to consider in evaluating likelihood of confusion, known as the *"Lapp* factors." *See Interpace Corp. v. Lapp, Inc.,* 721 F.2d 460, 463 (3d Cir.1983). Although the original *Lapp* factors were developed for cases involving non-competing goods, they have been adapted to apply to goods that compete directly as well. *KOS Pharms.,* 369 F.3d 700 at 709 As adapted, those factors are:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, competing or not competing, are marketed through the

**2.** *See* 15 U.S.C. § 1114(1)(a) (defining infringement as the unauthorized use of a "copy ... or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive"); 15 U.S.C. § 1125(a)(1) (creating cause of action for use "in connection with any goods ... [of] any word, term [or] name ... likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of [those] goods ... by another person").

same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*KOS Pharms.*, 369 F.3d at 709 (citation omitted).

"None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other." *Id.* (citation omitted). "[T]he different factors may properly be accorded different weights depending on the particular factual setting. A district court should utilize the factors that seem appropriate to a given situation." *Id.* (citation omitted). "[I]f a district court finds certain of the *Lapp* factors are inapplicable or unhelpful in a particular case, that court should explain its choice not to employ those factors." *Id.* at 711 (citation and quotes omitted).

### Lapp Factors

#### Degree of Similarity of the Marks (1)

"The single most important factor in determining likelihood of confusion is mark similarity." *KOS Pharms.*, 369 F.3d at 712–13. It is undisputed that Devco has used the trademarked name "Bijur" on the website and in its metatags. The mark used by Devco is exactly the same as Bijur's registered mark and thus increases the likelihood of confusion. This factor weighs in favor of Bijur.

#### Strength of the Owner's Mark (2)

"Under the Lanham Act, stronger marks receive greater protection because they carry greater recognition, so that a similar mark is more likely to cause confusion." *KOS Pharms.*, 369 F.3d at 715 (citation and quotes omitted). "The strength of a mark is determined by (1) the distinctiveness or conceptual strength of the mark and (2) its commercial strength or marketplace recognition." *Checkpoint Sys.*, 269 F.3d at 282 (citation omitted). Trademarks protected under the Lanham Act are divided into four categories: arbitrary or fanciful, suggestive, descriptive, and generic. *Id.* The name "Bijur" falls under the arbitrary or fanciful category, as it "neither describe[s] nor suggest[s] anything about the product." *Id.* (citations and quotes omitted). Arbitrary or fanciful marks are considered highly distinctive and are accorded trademark protection if they have developed a secondary meaning. *See id.* at 282–83 & n. 11. It is undisputed that the "Bijur" name has developed a secondary meaning as a brand of lubricating systems. *See id.* at 283 n. 10 ("In general a secondary meaning is established through extensive advertising which creates in the minds of consumers an association between the mark and the provider of the services advertised under the mark." (citation omitted)).

It is also undisputed that the Marks are well-known in the industrial equipment industry. *See id.* at 284 ("courts must look at the strength of the mark in the industry in which infringement is alleged"). Bijur has been doing business under the "Bijur" name for over 80 years. Most of the Marks have been registered since the early 1950s, and the "Bijur" name is registered in more than 20 countries. Because they are distinctive and commercially rec-

ognized, the Marks are strong. This factor weighs in favor of Bijur.

*Factors Indicative of the Care and Attention Expected of Customers (3)*

This factor "weighs against finding a likelihood of confusion when consumers exercise heightened care in evaluating the relevant products before making purchasing decisions." *KOS Pharms.*, 369 F.3d at 715 (citation and quotes omitted). Less expensive products require less care from consumers. *See Checkpoint Sys.*, 269 F.3d at 284. However, "[w]here the relevant buyer class is composed solely of professional, or commercial purchasers, it is reasonable to set a higher standard of care than exists for consumers." *Id.* at 285 (quoting 3 *McCarthy on Trademarks* § 23:101).

Many replacement parts cost only a few dollars (Sweeney Certif. 7), implying that customers are less likely to exercise much care in purchasing them. At the same time, both Bijur and Devco deal exclusively with commercial purchasers. Their products are used in industrial machinery and are sold to equipment manufacturers and to companies that buy and use equipment with integrated lubricating systems. (*See id.* 5–7 (describing Bijur's market); Durnan Decl. 3 (both parties have the same customers).) It is reasonable to expect these purchasers to be relatively sophisticated about the market and careful in their purchasing decisions. However, the extent to which the customers' sophistication decreases the likelihood of confusion is substantially mitigated by the low cost of the parts. This factor may weigh slightly in favor of Defendants but does not significantly favor either side.

*Length of Time Defendant's Mark Has Been Used Without Confusion/Evidence of Actual Confusion (4, 6)*

The parties have a long history of litigation over alleged customer confusion regarding a perceived affiliation between them. In 1986, Bijur sued Defendants in the Superior Court of New Jersey, Chancery Division, alleging that Devco was falsely representing that it was associated with Bijur. Bijur alleges that it had received complaints from customers who had attempted to contact the company using its former New Jersey telephone number. Devco apparently had acquired that number, and customers who thought they were calling Bijur would actually be connected to Devco. In 1987, the parties entered into a consent judgment in which Defendants, without acknowledging any wrongdoing, were enjoined from claiming any association with Bijur or interfering with any relationship between Bijur and its customers through "unfair business practices."

In 1997, Bijur alleged that Devco was violating the consent judgment by using the "Bijur" name in its listings in the Bergen County telephone directory and the Thomas Register, an industry publication. Bijur claims that it discovered the alleged infringement as a result of customer complaints. Upon Bijur's motion, the Chancery Division ordered Devco to remove the offending listings.

Notwithstanding these incidents, Bijur has not presented evidence of *current* customer confusion. It does not allege that there have been any customer complaints since 1997, and at no time has it alleged the existence of customer complaints in connection with Devco's website. Because Bijur has not provided evidence of actual customer confusion in connection with the website, this factor does not weigh in its favor. At the same time, the lack of such evidence does not necessarily weigh against Bijur, as "evidence of actual confusion is difficult to find because many instances are unreported." *KOS Pharms.*,

369 F.3d at 720 (citation and quotes omitted).

*Defendant's Intent in Adopting the Mark (5)*

"Evidence of intentional, willful and admitted adoption of a mark closely similar to the existing mark weighs strongly in favor of finding a likelihood of confusion." *Id.* at 721 (citation and quotes omitted). This inquiry includes an examination of whether the defendant intended to "promote confusion and appropriate the prior user's good will" as well as whether the defendant acted carelessly in choosing its mark. *Id.* (citation omitted).

Bijur alleges that Devco used the Marks to trade on Bijur's reputation and goodwill by passing off Showa products using the "Bijur" name and by implying a nonexistent affiliation between Bijur and Devco. Defendants claim that the "Bijur" name was used to sell genuine Bijur products and that non-Bijur-manufactured replacement parts were sold using the words "Replaces Bijur" and "Bijur Replacement Parts." Defendants thus do not dispute that they used the "Bijur" name in connection with the sale of non-Bijur-manufactured replacement parts.

■ This does not, in itself, demonstrate Defendants' intent to confuse the public. Devco is entitled to inform potential customers that its non-Bijur-manufactured parts replace Bijur parts. "The Lanham Act does not prohibit a commercial rival's truthfully denominating his goods a copy of a design in the public domain, though he uses the name of the designer to do so. Indeed it is difficult to see any other means that might be employed to inform the consuming public of the true origin of the design." *G.D. Searle & Co. v. Hudson Pharm. Corp.,* 715 F.2d 837, 842 (3d Cir.1983); *see Hypertherm, Inc. v. Precision Prods., Inc.,* 832 F.2d 697, 700 (1st Cir.1987) (competing firm

may use originator's trademark descriptively, as long as use is truthful and does not generate confusion); *Elec. Auto–Lite Co. v. P. & D. Mfg. Co.,* 78 F.2d 700, 703 (2d Cir.1935) (holding that the use of the phrase "to fit Auto–Lite" and reference to the plaintiff's corresponding part numbers was permissible); *Porter v. Farmers Supply Serv., Inc.,* 617 F.Supp. 1175, 1187 (D.Del.1985) ("Merely specifying that a replacement part will be suitable for use in a product bearing a trademarked name lacks the requisite element of actual or foreseeable deception to the public.").

There is no evidence in the record that Defendants intended to do anything more than inform the public as to the nature of Devco's replacement parts. The tabular lists of parts clearly set forth the Devco model number for each part and the Bijur model number that it replaces. Neither does Devco's use of the words "Bijur Replacement Parts" on the website demonstrate an intent to confuse the public. The webpage clearly announces that Devco sells products by a number of manufacturers and that it sells both original equipment and replacement parts. There is nothing inherently misleading about the use of the "Bijur" name in this context.

■ Nor is there evidence to show that Defendants' use of the "Bijur" name in its metatags was intended to confuse the public. Bijur argues that Defendants used the metatags to create initial interest confusion among customers searching for Bijur products on the Internet. Initial interest confusion occurs when a competitor "lur[es] potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated." *Checkpoint Sys.,* 269 F.3d at 294 (quoting *Dorr–Oliver, Inc. v. Fluid–Quip,*

*Inc.*, 94 F.3d 376, 382 (7th Cir.1996)). Under certain circumstances, initial interest confusion can be created by the misleading use of metatags. *See, e.g., Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir.1999).

■■■ However, just as the Lanham Act permits Devco to inform customers through its website that it sells replacements for Bijur parts, it allows Devco to provide that same information in its metatags. In *Brookfield Communications*, the Ninth Circuit held that although some uses of metatags can cause initial interest confusion, metatags in which a competitor's mark is used "truthfully to identify the competitor's goods" are permissible under the Lanham Act. *Id.* at 1065 (citing *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir.1968), which states that a copyist may use the originator's mark to identify the product that it has copied). When potential customers would run Internet searches using variations on the keyword "Bijur," the result lists would include a link to the Devco webpage under the title metatag "bijur replacement lubrication parts by Devco." At that point, the customers could choose whether or not to visit the Devco site. Nothing in this description of the site was misleading; it informed potential customers that the replacement parts were "by Devco," implying that they were not manufactured by Bijur. It cannot be inferred that Defendants intended to use Devco's metatags to confuse the public or appropriate Bijur's goodwill. This factor weighs in favor of Defendants.

*Whether Goods Are Marketed Through the Same Channels of Trade and Advertised in the Same Media (7)*

The greater the similarity in advertising and marketing campaigns, the greater the likelihood of confusion. This is a fact intensive inquiry that requires a court to examine the media the parties use in marketing their products as well as the manner in which the parties use their sales forces to sell their products to consumers.

*KOS Pharms.*, 369 F.3d 700 at 722 (citation and quotes omitted).

Both Bijur and Devco advertise in the same media, including the Thomas Register of American Manufacturers. Both have websites through which they market their products. Bijur's website provides customers with product and technical information, information on upcoming trade shows, and access to service bulletins. Visitors to Bijur's website can request price quotes, review answers to frequently asked questions, contact Bijur, or locate an authorized distributor. Devco's website provides lists of replacement lubricating system parts and contains the company's contact information. There is not enough evidence in the record to determine what other services, if any, are provided on the site. On the evidence presented, there is nothing on Devco's site to indicate that it is affiliated with Bijur or is an authorized distributor of Bijur-manufactured parts. The only references to Bijur are the permissible ones already discussed. Bijur is not identified as an affiliate of Devco. It is listed as one of a number of manufacturers whose products are carried by Devco.

That both parties advertise in the same media, including the Internet, increases the possibility that Devco's use of the "Bijur" name caused a likelihood of confusion. However, it is unlikely that a reasonable visitor to the Devco website would believe that the company was affiliated with or an authorized distributor of Bijur. This factor weighs in favor of Devco.

*Extent to Which Targets of the Parties' Sales Efforts Are the Same (8)*

"[W]hen parties target their sales efforts to the same consumers, there is a stronger

likelihood of confusion." *Checkpoint Sys.,* 269 F.3d at 289 (citation omitted). It is undisputed that Bijur and Devco target the same customers-equipment manufacturers and companies that buy and use equipment with integrated lubricating systems. This factor weighs in favor of Bijur.

*Relationship of the Goods (9)*

"The closer the relationship between the products, the greater the likelihood of confusion." *KOS Pharms.,* 369 F.3d 700 at 722 (citation and ellipses omitted). By their nature, the replacement parts marketed by Devco are nearly identical to the corresponding Bijur parts. This factor weighs in favor of Bijur.

*Other Facts Suggesting the Public Might Expect the Prior Owner To Manufacture Both Products (10)*

"In assessing this factor, courts may look at the nature of the products or the relevant market, the practices of other companies in the relevant fields, or any other circumstances that bear on whether consumers might reasonably expect both products to have the same source." *Id.* at 724. The parties do not explicitly address this factor. The Court cannot determine from the record whether the market for lubricating system parts is such that customers are generally aware that some replacement parts are not manufactured by the manufacturer of the original parts. If it were, this factor would weigh against a likelihood of confusion. Because there is no evidence supporting or opposing this conclusion, this factor does not weigh in favor of either side.

**Weighing the Lapp Factors**

▇▇▇▇ The Court must determine if there is a genuine issue of material fact as to whether Devco's use of the Marks to sell Showa-manufactured Bijur replacement parts causes a likelihood of confusion.[3] The "Bijur" name is a strong mark and is entitled to substantial protection. It is undisputed that Devco used the exact trademarked name "Bijur" on its website. Although mark similarity is ordinarily the most important factor in the *Lapp* analysis, however, it is not necessarily determinative. *Checkpoint Sys.,* 269 F.3d at 300.

Bijur and Devco target the same customers, and the Showa-manufactured Bijur replacement parts sold by Devco are nearly identical to the original Bijur parts. The low cost of replacement parts leads to the inference that customers do not exercise much care in their purchasing decisions. Both companies market their products through similar media. These factors increase the likelihood of confusion.

However, the commercial purchasers with whom the companies do business can be expected to understand the market. Devco's website did not suggest that it was affiliated with or an authorized distributor of Bijur. There is no evidence of actual customer confusion or any intent by Devco to confuse customers through its website or metatags. Most importantly, regardless of any alleged intent to confuse the public, Devco was entitled to use the Marks in the manner in which it did. Devco's statements on the website that its non-Bijur-manufactured replacement parts "Replace[d] Bijur" and that it carried "Bijur Replacement Parts" were not deceptive as a matter of law. A commercial rival is permitted to use the original manufacturer's name truthfully to describe a replacement part *See G.D. Searle & Co. v. Hudson Pharm. Corp.,* 715 F.2d 837, 842 (3d Cir.1983); *Hypertherm, Inc. v. Precision Prods., Inc.,* 832 F.2d 697, 700 (1st Cir.

---

**3.** The parties agree that the "first sale" doctrine permits Devco to use the "Bijur" name to resell genuine Bijur parts. *See, e.g., Iberia*

*Foods Corp. v. Romeo,* 150 F.3d 298, 301 n. 4 (3d Cir.1998) (defining "first sale" or "exhaustion" doctrine).

1987); *Elec. Auto–Lite Co. v. P. & D. Mfg. Co.*, 78 F.2d 700, 703 (2d Cir.1935); *Porter v. Farmers Supply Serv., Inc.*, 617 F.Supp. 1175, 1187 (D.Del.1985). For the same reason, Devco's use of the "Bijur" name in its metatags was permissible. *See Brookfield Communs.*, 174 F.3d at 1065.

As a matter of law, Devco's use of the Marks does not cause a likelihood of confusion. Defendants' Motion for Summary Judgment is granted as to Counts I through V.

### Dilution

■ Counts VI and VII assert causes of action for dilution under the Federal Trademark Dilution Act (FTDA), 15 U.S.C. § 1125(c),[4] and N.J. Stat. Ann. § 56:3–13.20.[5] Bijur argues that Devco's use of the "Bijur" name to sell non-Bijur-manufactured replacement parts blurs the distinction between parts manufactured by Bijur and those manufactured by other companies. Devco claims that it is entitled to use the "Bijur" name to sell replacement parts, as such use does not affect the public's perception that the "Bijur" name signifies something unique.

■ "The federal cause of action for trademark dilution grants extra protection to strong, well-recognized marks even in the absence of a likelihood of consumer confusion ... if the defendant's use diminishes or dilutes the strong identification value associated with the plaintiff's famous mark." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir.2000) (citing 4 *McCarthy on Trademarks* § 24:70). Bijur asserts that Defendants engaged in dilution by "blurring," which occurs when the defendant's use of the plaintiff's famous mark causes the public to associate both the plaintiff and the defendant with the famous mark, *id.* at 168.

Although this Circuit has not addressed the issue, the Ninth Circuit has held that "nominative uses" of marks are excepted from anti-dilution law. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 806 (9th Cir. 2002); *cf. Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F.Supp.2d 398, 402–03 (D.N.J.1998) (applying nominative fair use defense in trademark infringement context).[6] "[A] defendant's use of a plaintiff's mark is nominative where he or she used the plaintiff's mark to describe the plaintiff's product, *even if the defendant's ultimate goal is to describe his own product.* The goal of a nominative use is generally for the purposes of com-

---

**4.** The relevant subsection of the statute provides, in part:

The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c)(1).

**5.** The statute provides, in relevant part:

The owner of a mark which is famous in this State shall be entitled, subject to the principles of equity, to an injunction, com-

mencing after the owner's mark becomes famous, against another person's use of the mark which causes dilution of the distinctive quality of the owner's mark, and to obtain other relief provided in this section.

N.J. Stat. Ann. § 56:3–13.20.

**6.** A district court in this circuit has held, without citation, that the Third Circuit does not recognize the nominative fair use defense. *See Basic Fun, Inc. v. X–Concepts, L.L.C.*, 157 F.Supp.2d 449, 456 (E.D.Pa.2001). It is more accurate to say that the Third Circuit has not addressed the validity of this defense. At least one court in this district has applied the defense in a trademark infringement case. *See Liquid Glass Enters., Inc. v. Dr. Ing. h.c.F. Porsche AG*, 8 F.Supp.2d 398, 402–03 (D.N.J. 1998).

parison, criticism or point of reference." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 809 (9th Cir.2003) (citations and quotes omitted, emphasis in original).

This holding is consistent with the purposes of anti-dilution law and the FTDA. When a defendant uses the plaintiff's mark to describe the plaintiff's product, it is not creating an improper association in consumers' minds between the plaintiff's mark and a new product. *Playboy*, 279 F.3d at 806. The FTDA recognizes this principle by specifically excepting "users of a trademark who compare their product in 'commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.'" *Id.* (quoting 15 U.S.C. § 1125(c)(4)(A)). Although this case does not involve comparative advertising, the same principle applies to advertising replacement parts.

Devco's use of the words "Replaces Bijur" and "Bijur Replacement Parts" to describe its non-Bijur-manufactured replacement parts are nominative uses of the "Bijur" name. A three-factor test determines whether the use of a mark is a nominative use:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Playboy Enters., Inc. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1029–30 (9th Cir.2004) (citing *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir.1992)); *Liquid Glass*, 8 F.Supp.2d at 402. Clearly, Bijur replacement parts are not identifiable as such without use of the "Bijur" name. Devco did not use any aspects of the Marks other than the "Bijur" name, such as stylized versions thereof, in promoting the replacement parts on the website. And, as discussed above, nothing in the website or metatags suggested an affiliation between the parties.

Devco's nominative use of the "Bijur" trademark does not imply that the mark applies to Devco's non-Bijur-manufactured goods. By describing its parts as replacements for Bijur parts, Devco does not weaken the distinctive link between Bijur and Bijur's goods, which is the sine qua non of dilution by blurring. *See* 4 *McCarthy on Trademarks* § 24:103. It is simply using the "Bijur" name as a point of reference for its own products. *See Mattel*, 353 F.3d at 809. Bijur cannot prevail on its federal dilution claim. Because the standard for dilution under N.J. Stat. Ann. § 56:3–13.20 is similar to the federal standard, *CIT Group, Inc. v. Citicorp*, 20 F.Supp.2d 775, 794 (D.N.J.1998) (citing *Jews for Jesus v. Brodsky*, 993 F.Supp. 282, 310 (D.N.J.1998)), Bijur's state claim must fail as well. Defendants' Motion is granted as to Counts VI and VII.

### *Unjust Enrichment*

To establish a claim for unjust enrichment under New Jersey law,

> a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust. The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (1994) (citations omitted).

Bijur offers no legal or factual support for its unjust enrichment claim in its briefs. It has not established that it conferred any benefit on Defendants. More importantly, because Defendants' use of the Marks has been lawful, it would not be unjust to allow them to retain any benefit they may have received. Defendants' Motion is granted as to Count VIII.

CONCLUSION

Defendants' Motion for Summary Judgment is granted.

SO ORDERED:

## ORDER

This matter having been opened to the Court by Peter J. Kurshan, Esq., appearing for Defendants Devco Corporation and William E. Durnan, Jr., in the presence of Carol Ann Slocum, Esq., attorneys for Bijur Lubricating Corporation, and the Court having heard argument of counsel, and good cause appearing therefor,

It is on this 26th day of August, 2004,

ORDERED that Defendants' Motion for Summary Judgment is GRANTED.