Mueller v. US Pipe & Foundry Co.        CV-03-170-JD  01/10/05  P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Mueller Co.
and Mueller International, Inc.

    v.                                Civil No. 03-170-JD
                                       Opinion No. 2005 DNH 005
United States Pipe & Foundry Co.


O R D E R


The plaintiffs, Mueller Co. and Mueller International, Inc. (collectively, "Mueller") object to the magistrate's order of August 6, 2004.  That order reconsidered the magistrate's earlier denial of Mueller's motion to file a supplemental complaint but nevertheless disallowed the filing on the basis of its futility. The defendant, United States Pipe & Foundry Co. ("U.S. Pipe") has filed a response to Mueller's objections.


Standard of Review

"Upon motion of a party the court may, on reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  Fed. R. Civ. P. 15(d).  Courts, including this one, generally assess motions to supplement pleadings under the same standard applicable to motions to amend.

Sheppard v. River Valley Fitness One, L.P., 2002 DNH 20, 2002 WL 197976, at *5 (D.N.H. Jan. 24, 2002); see also, e.g., Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996); Quaratino v. Tiffany Co., 71 F.3d 58, 66 (2d Cir. 1995); Hassoun v. Cimmino, 126 F. Supp. 2d 353, 360-61 (D.N.J. 2000); 3 James Wm. Moore et al., Moore's Federal Practice § 15.30, at 15-109 (3d ed. 2004). The denial of a proposed supplement on the basis of futility is therefore proper. See, e.g., Glatt, 87 F.3d at 194; Sheppard, 2002 WL 197976, at *6. A magistrate's denial of a motion to amend on futility grounds is subject to de novo review. See HCC, Inc. v. R H & M Mach. Co., 39 F. Supp. 2d 317, 321-22 (S.D.N.Y. 1999); 14 Moore, supra, § 72.02[8], at 72-16.

## Discussion

Mueller's proposed supplemental complaint asserts claims of trademark infringement and unfair competition based on U.S. Pipe's alleged use of Mueller's mark to promote the fire hydrant model which was the subject of Mueller's second amended complaint in this action. Upon the parties' stipulation, the court entered judgment for Mueller on count one of its second amended complaint, dismissed the remaining counts without prejudice, and dismissed U.S. Pipe's counterclaims with prejudice on October 14, 2004. The stipulation provided, however, that Mueller could

2

continue to pursue its objection to the magistrate's denial of its proposed supplemental complaint.

In its proposed supplemental complaint, Mueller alleges that U.S. Pipe is marketing the hydrant "and its parts as interchangeable with, for use with, and/or identical to Mueller Hydrants and parts." Suppl. Compl. ¶ 11. Mueller asserts that such claims are false because "while the U.S. Pipe parts may appear to fit with the Mueller Hydrants, the failure to achieve specifications and tolerances makes the U.S. Pipe parts susceptible to failures." Id. ¶ 13. Mueller also complains that U.S. Pipe's marketing strategy "enabl[es] and encourag[es]" consumers to create "hybrid devices," i.e., hydrants bearing U.S. Pipe's name on one part but Mueller's mark on another. Id. ¶ 12. The result, according to Mueller, is confusion as to the source of the hydrant and therefore actionable trademark infringement.

As the First Circuit has remarked, such a claim is "difficult to take seriously." Elecs. Corp. of Am. v. Honeywell, Inc., 428 F.2d 191, 194 (1st Cir. 1970). The defendant in Honeywell manufactured a programmer for use as a replacement in the plaintiff's safety control systems for power plants and advertised the product through use of the plaintiff's trade name. Id. at 193. The defendant's programmer, however, was "conspicuously and permanently marked with its name, a name too

3

well known to be thought a subsidiary trade name of the plaintiff's." Id. at 193. Accordingly, the First Circuit determined that the defendant's product suffered from "no deceit as to its parentage." Id. The court also reasoned that, following installation in a customer's facility, the programmer

> is not likely to be resold to some further customer. There are, conceivably, a few instances in which an owner could subsequently be mistaken, or might blame plaintiff if defendant's programmer failed to operate, but some slight danger of confusion accompanies any competition in the sale of replacement parts.

Id. at 193-94.

In the court's view, Honeywell is squarely on point here. Although U.S. Pipe allegedly markets its hydrants as interchangeable with Mueller's, the U.S. Pipe products, by Mueller's own account, bear U.S. Pipe's trademark rather than that of Mueller. This important fact distinguishes this case from the cases on which Mueller relies. Cf. Rolex Watch USA, Inc. v. Meece, 158 F.3d 816, 826-27 (5th Cir. 1998) (remanding for consideration of whether defendant's sale of watches bearing plaintiff's mark amounted to counterfeiting); Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894, 900 (9th Cir. 1997) (noting that defendants' sale of reconditioned circuit breakers bearing plaintiff's mark constituted infringement); Taylor Made Golf Co. v. MJT Consulting

4

Group, LLC, 265 F. Supp. 2d 732, 741-42 (N.D. Tex. 2003) (ruling that defendants' sale of golf clubs bearing plaintiff's mark amounted to counterfeiting).

Similarly, apart from U.S. Pipe's marketing of its hydrants as interchangeable, Mueller does not allege any conduct by its competitor that would confuse consumers into believing that U.S. Pipe products actually came from Mueller. Cf. New Kayak Pool Corp. v. R & P Pools, Inc., 246 F.3d 183, 184-86 (2d Cir. 2001) (vacating denial of injunction against defendant's statements in catalog "implying that [it] sold [plaintiff's] parts and supplies"); Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 699-700 (1st Cir. 1987) (upholding injunction against sale of replacement parts which looked the same to the naked eye and closely emulated plaintiff's packaging and parts numbering system).[1] "It is not unfair to use the name of a well-known article and label a repair part if it be used in a fair way and simply to indicate that the part is made to fit the article." Elec. Auto-Lite Co. v. P. & D. Mfg. Co., 78 F.2d 700, 703 (2d Cir. 1935); see also Hypertherm, 832 F.2d at 700; Bijur

---

[1]Although the proposed supplemental complaint alleges that U.S. Pipe "has used a part number system for ordering parts of [its hydrant] that is virtually identical to the part number system used for the Mueller . . . hydrants," Suppl. Compl. ¶ 13, Mueller did not rely on this allegation in its motion for reconsideration and does not mention it in its objection.

5

Lubricating Corp. v. Devco Corp., 332 F. Supp. 2d 722, 730 (D.N.J. 2004); Porter v. Farmers Supply Serv., 617 F. Supp. 1175, 1187-88 (D. Del. 1985), aff'd, 790 F.2d 882 (Fed. Cir. 1986); 4 Rudolf Callman, Callman on Unfair Competition, Trademarks & Monopolies § 22:27 (4th ed. 1983); 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:51 (4th ed. 2003). The insufficiency of Mueller's proposed supplemental complaint proceeds from its failure to accuse U.S. Pipe of anything more.

Furthermore, as in Honeywell, Mueller does not allege that the U.S. Pipe name is sufficiently obscure so that consumers will be led to believe its products are associated with Mueller in some way. Although Mueller suggests that a malfunction in one of U.S. Pipe's parts installed in a Mueller hydrant would be blamed on Mueller, Honeywell makes clear that any such "slight danger of confusion" is an acceptable consequence of legitimate competition. See also Hypertherm, 832 F.2d at 700 ("Even if the parts are substandard, the rule holds--so long as their origin is not obscured.")

Mueller attempts to distinguish Honeywell on the ground that it "involved a discrete, commonly replaced part within the plaintiff's machine; in the case at bar, multiple sources are prominently displayed on the exterior of the same hybrid hydrant." Obj. at 12 n.7. Yet neither Honeywell nor any of its

6

progeny suggests that the legality of using a competitor's mark to sell replacement parts for its goods depends on whether the parts end up on the inside or the outside of the mark holder's product, and Mueller provides no other support for its novel "hybridity" theory.  Indeed, in Honeywell, the result of the defendant's actions would have been the installation of its programmer, "conspicuously and permanently marked with its name," among the other components of the plaintiff's control system. 428 F.2d at 193.  There is thus no meaningful distinction between the facts alleged in this case and those of Honeywell, other than those alleged in support of Mueller's misrepresentation theory.

In support of that theory, Mueller relies on Honeywell for the proposition that U.S. Pipe's alleged marketing of its hydrant and parts as interchangeable with Mueller's, despite the fact that U.S. Pipe's components do not meet the same specifications as Mueller's, states a claim for unfair competition.  Honeywell noted the First Circuit's obedience to "the 'traditional' doctrine that competitors' actions for false advertising are limited to instances of trademark infringement, passing off, and product disparagement," adopting the reasoning that:

> "In an open market, it is generally impossible to prove that a customer, whom the defendant has secured by falsely describing his goods, would have bought of the plaintiff, if the defendant had been truthful.  Without that, the plaintiff . . . cannot show any ascertainable

> loss . . . . The law does not allow him to sue as a vicarious avenger of the defendant's customers."

428 F.2d at 194 (quoting <u>Ely-Norris Safe Co. v. Mosler Safe Co.</u>, 7 F.2d 603, 604 (2d Cir. 1925) (L. Hand, J.), <u>rev'd on other grounds</u>, 273 U.S. 12 (1927)); <u>see also</u> <u>B. H. Bunn Co. v. AAA Replacement Parts Co.</u>, 451 F.2d 1254, 1266 (5th Cir. 1971) ("If one says that his parts 'will fit' another machine and they do not, then remedy would lie only with the purchaser of the part, absent unusual circumstances.")

In the "very special circumstances" of <u>Honeywell</u>, however, the First Circuit found this reasoning inapplicable, because the litigants comprised a "two-firm market" for the product at issue, giving consumers "nowhere to turn except to the plaintiff or the defendant." 428 F.2d at 194 & n.3. As a result, any sale the defendant won through its misrepresentations necessarily amounted to a sale lost by the plaintiff. Here, in contrast, Mueller has not alleged that it and U.S. Pipe are the only two manufacturers of municipal fire hydrants.[2] Thus, Mueller cannot recover for U.S. Pipe's alleged misrepresentations that its hydrants are

---

[2]Mueller argues in its objection that "[u]nlike a crowded market . . . there can be no legitimate dispute that U.S. Pipe's misrepresentations will take sales away from Mueller." Obj. at 12. <u>Honeywell</u>, however, did not recognize a rule applicable outside of a crowded market. It recognized an exception inapplicable outside of a two-firm market. <u>See</u> <u>B. H. Bunn Co.</u>, 451 F.2d at 1266-67.

interchangeable under the theory recognized in <u>Honeywell</u>.[3]  <u>See</u>
<u>B. H. Bunn</u>, 451 F.2d at 1266-67 (finding the absence of two-firm
market fatal to plaintiff's <u>Honeywell</u> theory based on defendant's
false statement that its parts would fit plaintiff's machines).

Mueller's proposed supplemental complaint fails to state a
claim against U.S. Pipe on which relief can be granted.[4]  The
magistrate properly denied the supplemental complaint as futile.

---

[3]Count X of the amended complaint asserts a claim for
violation of 15 U.S.C. § 1125(a), the Lanham Act's prohibition on
false advertising, based on U.S. Pipe's alleged misrepresenta-
tions of the compatibility of its products with those of Mueller.
Neither Mueller's objection nor its motion for reconsideration,
however, mentioned this claim (aside from a parenthetical
reference to the holding of a district court case which
apparently discussed such a theory), arguing instead that the
alleged misrepresentations give rise to a common-law claim under
<u>Honeywell</u>.  This omission is particularly glaring given the split
of authority on whether 15 U.S.C. § 1125(a) permits relief in the
absence of actual harm to confer standing on the plaintiff, which
Mueller has not sufficiently alleged.  <u>See generally</u> 4 McCarthy,
<u>supra</u>, § 27:31.  The court therefore will not consider any claim
Mueller might have intended to assert pursuant to 15 U.S.C. §
1125(a).  <u>See</u> Fed. R. Civ. P. 72(b) (requiring "specific"
objections to magistrate's order); <u>see also</u> <u>Higgins v. New</u>
<u>Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 260 (1st Cir. 1999).

[4]Accordingly, the court need not consider Mueller's charge
that the magistrate erred by relying on materials outside of the
proposed supplemental complaint itself in deeming it futile.

## Conclusion

For the foregoing reasons, the court approves the magistrate's order denying Mueller's motion for reconsideration, over Mueller's objection (document no. 82). Because judgment or dismissal has already been entered on Mueller's second amended complaint in its entirety through the court's approval of the parties' stipulation, the clerk shall close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

January 10, 2005

cc:   William M. Atkinson, Esquire
      Brian L. Michaelis, Esquire
      Brian E. Moran, Esquire
      David B. Wilson, Esquire