Caton v Norton, Sec'y of Interior      04-CV-439-JD  05/02/05
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Harold W. Caton

     v.                                 Civil No. 04-cv-439-JD
                                        Opinion No. 2005 DNH 076
Gale Norton, in her
official capacity as
Secretary of the Interior


                            O R D E R


     The Secretary of the Interior has moved to dismiss Harold W.

Caton's pro se complaint seeking relief under the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"), on the ground that

Caton has already received all of the information he requested

and that his case is therefore moot.  Caton has objected to the

Secretary's motion, moved to strike its supporting declaration,

and moved to amend his complaint.  The Secretary has objected to

both the motion to strike and the motion to amend, as well as to

Caton's subsequent motions for leave to file replies to those

objections and to file a sur-reply to the motion to dismiss.  The

court grants Caton leave to file his replies and sur-reply, all

of which have been considered in ruling on the other motions.


                                1

<u>Background</u>

On December 11, 2003, Caton sent a fax to Audrey Ambrosino, a public information officer for the National Park Service, requesting "all information within your care/custody/control under the freedom of information act (FOIA) (excluding the payroll). They are contracts . . . ." Mem. Opp. Mot. to Dismiss, Ex. D. The fax went on to identify five contracts awarded for the construction of improvements to the Northern Canal section of the Lowell National Historical Park in Lowell, Massachusetts. Caton alleges that Ambrosino and another Park Service employee, Marcia Dolce, responded by agreeing to allow Caton to review the documents, marking any pages he wanted copied so that "the 'flagged' documents would be copied and immediately forward [*sic*] the copies to [him]." Compl. ¶ 10. Because neither Ambrosino nor Dolce informed Caton that any further review was forthcoming, he believed that his FOIA request had been unconditionally granted.

Following his review of the contracts and related records at the Park Service office on December 22, 2003, Caton flagged a number of documents for copying. The Park Service responded two days later by producing "copies of those pages [Caton] requested that are contained in the contracts [he] cited in [his] written FOIA request of December 11, 2003," but advised him that the remainder of the flagged documents fell outside the scope of that

2

entreaty and therefore would need to be the subject of a separate FOIA request. Mem. Opp. Mot. to Dismiss, Ex. D. Furthermore, in a letter dated February 9, 2004, the Park Service regional director informed Caton that the agency was withholding some of the documents he had flagged (which had been included in his original request) on the ground that they were "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" by virtue of the deliberative process privilege. 5 U.S.C. § 552(b)(5); NLRB v. Sears, Roebuck, & Co., 421 U.S. 132, 149-55 (1975). Caton promptly appealed this decision to the Department's FOIA officer, arguing that the Park Service had waived any privilege by allowing him to review the requested documents at its office. His letter of appeal did not reference the Park Service's earlier determination that some of the documents he flagged were outside the scope of his FOIA request.

Through an October 15, 2004, letter, the FOIA officer notified Caton that his appeal had been granted in part and denied in part. Specifically, the Department determined that, of the seventy-five documents that had been withheld, thirty should have been produced in their entirety and forty-three, although protected by the deliberative process privilege, should have been

3

produced in redacted form.[1]  The Department determined that the remaining two documents were properly withheld in their entirety on the basis of the privilege.  The Department also rejected Caton's contention that the Park Service had waived the privilege by allowing him to examine the requested documents.  Records were produced in accordance with the appeals officer's determinations under cover of a letter dated November 5, 2004.  Dissatisfied, Caton commenced this action on November 23, 2004, seeking non-redacted copies of all documents withheld by the Park Service on the ground that any privilege had been waived.

On January 20, 2005, Lee Hammond, a chief of administration for the Lowell National Historical Park, informed Caton that the agency had reconsidered the partial denial of his FOIA request and decided to release the sought-after documents in their entirety.  Caton's review of the material, however, revealed that a print-out of a series of e-mails among Park Service employees, which had been initially released in redacted form as document 6, was missing from the most recent production.  Although that production contained a document bearing the number 6, that document appeared to be identical to a subsequent series of

---

[1]The Department also determined that nine of the documents contained sensitive personal information, such as employee telephone numbers and e-mail addresses, that would be redacted before producing them.  5 U.S.C. § 552(b)(6).

4

e-mails that had been produced as document number 60.  Caton notified counsel for the Secretary, who pledged to investigate.

Hammond then sent Caton an unredacted copy of the original document 6, under cover of a letter explaining that "the document I incorrectly sent to you which was also numbered '6' was actually a duplicate of a document numbered '60' with the '0' missed by the copy machine." Mem. Opp. Mot. to Dismiss, Ex. I. Hammond reiterates this explanation in her declaration submitted in support of the motion to dismiss.  Hammond Decl. ¶ 5.  As Caton points out in his objection, however, a cursory comparison of documents 6 and 60 from the January 20, 2005, production calls this account into question.  A number was handwritten in the upper right-hand corner of each document and enclosed with a close-fitting circle so that, if the "0" on document 60 had in fact been "missed" by the copier, space would have been left between the remaining "6" and the circle where the "0" should have appeared.  Yet the circle fits snugly around the "6" on the document produced with that number on January 20, 2005.  <u>Compare</u> Mem. Opp. Mot. to Dismiss, Ex. Z, at 6 <u>with</u> <u>id.</u> at 60.

Meanwhile, between December 7, 2004, and January 12, 2005, Caton served the Park Service with additional FOIA requests for the information deemed to fall outside the scope of his initial request.  On January 14, 2005, the Park Service informed Caton by letter that the cost of retrieving and copying the additional

5

documents would come to more than $55,000 and that, in accordance with Department regulations, the Park Service would not begin processing the request until Caton remitted or obtained a waiver of the fee. See 5 U.S.C. § 552(a)(4)(A) (authorizing agencies to charge search and duplication fees, subject to waiver, in connection with FOIA requests). The letter also notified Caton that he had the right to appeal this decision to the Department's FOIA officer. Caton made no such appeal.

## Discussion

### I. Caton's Motion to Amend His Complaint

The court must first consider Caton's motion to amend, since its allowance could moot the Secretary's pending motion to dismiss, at least in part. See DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999). "While leave to amend shall be freely given when justice so requires . . . the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases."[2] Invest Almaz v.

---

[2]Caton also seeks to amend his complaint through Rule 15(d), which permits a "supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented," on the basis of the Secretary's production of documents to him on January 20, 2005. This court uses the same standard in assessing a motion made under either Rule 15(a) or 15(d). Mueller Co. v. United States Pipe & Foundry Co., 351 F. Supp. 2d 1, 2 (D.N.H. 2005) (citing cases), appeal docketed, No. 05-1223 (1st Cir. Feb. 17, 2005).

6

<u>Temple-Inland Forest Prods. Corp.</u>, 243 F.3d 57, 71 (1st Cir. 2001) (internal quotation marks omitted; ellipse in original). Caton seeks to amend his complaint to seek enforcement of the alleged "promise to allow [him] to review all records of [the] construction contracts" referenced in his original FOIA request, characterizing the Park Service's refusal to provide copies of the additional documents absent his payment of the attendant fees as a breach of contract. Mot. to Amend at 1. Caton also wishes to add claims for fraud and "bad faith and malfeasance" arising out of both the allegedly dishonored promise and the substitution of document 60 for document 6 in the January 20, 2005, production by the Park Service.[3] <u>Id.</u>

This court lacks subject-matter jurisdiction over any such claims. "It is well settled that the United States, as sovereign, may not be sued without its consent. Jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued."[4] <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995) (internal citation omitted). Although the United States has consented to suit in federal district court on certain

_____

[3]Caton also accuses the Department of bad faith for supplying the allegedly deficient Hammond affidavit.

[4] Government employees acting in their official capacity, such as the Secretary here, enjoy the same immunity. 28 U.S.C. § 2679(b)(1).

claims through the Federal Tort Claims Act, 28 U.S.C. § 2674, the Act exempts claims sounding in misrepresentation. Id. § 2680(h). Caton's claims for fraud and bad faith, arising out of statements allegedly made by Park Service employees during or subsequent to the processing of his FOIA requests, fall within this exemption.[5] Santoni v. FDIC, 677 F.2d 174, 189 (1st Cir. 1982); see also Ramirez v. United States, 567 F.2d 854, 856 (9th Cir. 1977) (en banc) ("The misrepresentation exclusion presumably protects the United States from liability in those many situations where a private individual relies to his economic detriment on the advice of a government official.") Accordingly, the court lacks jurisdiction over those claims. See, e.g., Bolduc v. United States, 402 F.3d 50, 55 (1st Cir. 2005).

This court also lacks subject-matter jurisdiction over Caton's claim that the Department breached its alleged promise to provide him, free of charge, with all of the documents he believes to have been encompassed by his initial FOIA request. Although the Little Tucker Act conveys the jurisdiction of the District Court over certain claims founded upon "any express or

_____
[5]At least one court has stated, albeit in dicta, that an agency's misrepresentations in responding to a FOIA request are not actionable for the simple reason that the statute does not contemplate any such liability. Johnson v. City of Shorewood, 360 F.3d 810, 816 (8th Cir.), cert. denied, 125 S. Ct. 43 (2004). This court need not decide whether to follow that dictum here, as sovereign immunity clearly bars Caton's fraud claims.

implied contract with the United States," 28 U.S.C. 1346(a)(2), the Act "does not authorize claims that seek primarily equitable relief." Berman v. United States, 264 F.3d 16, 21 (1st Cir. 2001) (citing Richardson v. Morris, 409 U.S. 464, 465 (1973)). The Little Tucker Act, then, provides no jurisdiction over Caton's claims seeking enforcement of the alleged promise to provide the records identified in his initial FOIA request.[6]

Finally, to the extent Caton invokes FOIA itself as a basis for judicial relief from the Park Service's decision to withhold the documents it has deemed beyond the scope of his initial request, he is not entitled to any such relief. "FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts." Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) (citing cases); see also, e.g., Hidalgo v. FBI, 344 F.3d 1256, 1259 (D.C. Cir. 2003). In its January 14, 2005, response to Caton's additional FOIA requests, the Park Service informed him that he had the right to appeal its response to the Department's FOIA officer, as he had done with the Park Service's decision on his initial FOIA request. Caton failed to do so. Accordingly, he cannot seek relief on his

_____

[6]Caton's claim seeking the same relief based on a theory of detrimental reliance is similarly barred, whether or not the Little Tucker Act waives sovereign immunity against promissory estoppel claims for monetary damages. See, e.g., Robbins v. Reagan, 780 F.2d 37, 52-53 (D.C. Cir. 1985) (refusing to take up issue of sovereign immunity from promissory estoppel claims).

9

subsequent FOIA requests in this court.  See, e.g., Taylor, 30 F.3d at 1369-70; Gargano v. IRS, 2003 WL 21967874, at *2 (D. Mass. July 10, 2003).  Because all of the claims Caton seeks to add are barred by the doctrines of sovereign immunity or exhaustion of remedies, his motion to amend is denied on the basis of futility.

## II.  The Secretary's Motion to Dismiss

The Secretary moves to dismiss Caton's initial complaint as moot, asserting that he has by now received unredacted copies of all documents responsive to his original FOIA request.  It is well-settled that a defendant agency generally can moot a FOIA claim by reversing course and releasing the records originally withheld in response to the plaintiff's request.  E.g., Walsh v. Dep't of Veterans Affairs, 400 F.3d 535, 536-37 (7th Cir. 2005); Reg'l Mgmt. Corp. v. Legal Servs. Corp., 186 F.3d 457, 465 (4th Cir. 1999); Armstrong v. Executive Office of the President, 97 F.3d 575, 582 (D.C. Cir. 1996).  To do so, however, the agency must "show by affidavit that facts exist which moot the case."[7] 1 James T. O'Reilly, Federal Information Disclosure § 8:7 (3d ed.

---

[7]While the First Circuit has never expressly considered the issue in a FOIA case, it has held in other contexts that the defendant bears the "heavy burden" of demonstrating mootness. E.g., Adams v. Bowater Inc., 313 F.3d 611, 613 (1st Cir. 2002); Nunez-Soto v. Alvarado, 956 F.2d 1, 3 (1st Cir. 1992); accord 15 Moore, supra, § 101.101.

2000) (footnote omitted); see also Papa v. United States, 281 F.3d 1004, 1013 (9th Cir. 2002); Carson v. Dep't of Justice, 631 F.2d 1008, 1015 n.30 (D.C. Cir. 1980).

Furthermore, affidavits purporting to establish the adequacy of an agency's FOIA response must be "relatively detailed and nonconclusory . . . and . . . submitted by responsible agency officials in good faith." Maynard v. CIA, 986 F.2d 547, 559 (1st Cir. 1993). Such affidavits enjoy "'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" Id. at 560 (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (further internal quotation marks omitted); see also Carney v. Dep't of Justice, 19 F.3d 807, 813 (2d Cir. 1994).

Caton essentially argues that he has overcome this presumption with respect to the Hammond declaration by pointing out the apparent implausibility of her explanation of how the version of document number 6 released on January 20, 2005, came into existence. Mem. Opp. Mot. Dismiss ¶¶ 50-55. For the reasons already discussed, supra, the court believes that this showing suffices to demonstrate bad faith on the part of the agency, at least at this early stage of the litigation. Cf. Maynard, 986 F.2d at 564-65 (refusing to find bad faith in fact that agency lost file while processing FOIA request then found it after litigation of plaintiff's FOIA claim had reached appeals

11

court); <u>Sephton v. FBI</u>, ___ F. Supp. 2d ___, 2005 WL 712829, at *9 (D. Mass. Mar. 29, 2005) (rejecting contention that additional responsive records might exist as "conjectural and insufficient to demonstrate bad faith" in face of agency declarations specifically describing search of files).

The court also notes that the Hammond declaration, though purportedly submitted pursuant to 28 U.S.C. § 1746, is not subscribed to as true under penalty of perjury as required by the statute. <u>Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.</u>, 982 F.2d 686, 689-90 (1st Cir. 1993). Hammond's failure to acknowledge that submitting a declaration containing false statements subjects the declarant to criminal liability for perjury, 18 U.S.C. § 1621, is of concern to the court, particularly in light of the apparently counterfactual nature of her statement recounting the claimed copying error.

The Secretary rejoins that, whatever the strength of Caton's showing, "the material fact remains that [he] has received unredacted copies of both sets of the emails" comprising the documents originally produced in redacted form as documents number 6 and 60 and that his FOIA claim is therefore moot. Resp. Obj. Mot. Dismiss at 3, n. 2. Although the Secretary is correct that Hammond's dubious explanation of the document number 6 issue does not necessarily mean that the Department has not made a complete response to Caton's FOIA request, it nevertheless goes

12

to the heart of how that request was processed and therefore constitutes the sort of bad faith which prevents the court from relying on the Hammond declaration in dismissing the case. Indeed, "[e]ven when the bad faith concerns the underlying activities that generated the FOIA request rather than the agency's conduct in the FOIA action itself," the agency's affidavits will ordinarily fail to carry the day. Rugiero v. Dep't of Justice, 257 F.3d 534, 544 (6th Cir. 2001). Caton has therefore made a sufficient showing of bad faith underlying the Hammond declaration such that it cannot discharge the Secretary's burden of demonstrating mootness. See Urban v. United States, 72 F.3d 94, 95 (8th Cir. 1995) (reversing dismissal of FOIA claim as moot given affiant's "inadequate answer" as to agency's custody of requested record).

Caton's showing of bad faith also entitles him to discovery on the issue of the adequacy of the response to his initial FOIA request. Carney, 19 F.3d at 812-13; Porter v. Dep't of Justice, 717 F.2d 787, 793 (3d Cir. 1983); accord Giza v. Sec'y of Health, Educ. & Welfare, 628 F.2d 748, 751 (1st Cir. 1980) ("To the extent discovery is allowed in an [sic] FOIA action, it is directed at determining whether complete disclosure has been made . . . .") Nevertheless, as in all cases, this court retains broad discretion over the proper scope of such discovery. Maynard, 986 F.2d at 567; Laborers' Int'l Union of N. Am. v.

13

<u>Dep't of Justice</u>, 772 F.2d 919, 921 (D.C. Cir. 1984). At this stage, Caton may seek discovery concerning <u>only</u> the circumstances of the creation of the version of document no. 6 contained in the January 20, 2005, production. Any such discovery shall proceed in accordance with the Federal Rules of Civil Procedure and shall be completed by July 1, 2005. Caton may not seek discovery on any other subject during that time. Following Caton's opportunity for such limited discovery, the parties shall submit motions by July 21, 2005, directed toward the further resolution of this case. Finally, in light of the court's decision on the Secretary's motion to dismiss, Caton's motion to strike the Hammond declaration is denied as moot.

<u>Conclusion</u>

For the foregoing reasons, the Secretary's motion to dismiss (document no. 6) is DENIED. Caton's motion to amend (document no. 10) is DENIED and his motion to strike the Hammond declaration (document no. 9) is DENIED as moot. Caton's motions for leave to file replies and a sur-reply (document nos. 14, 16, and 17) have been GRANTED and those materials have been considered in reaching this decision. Caton may seek discovery, to proceed in accordance with the Federal Rules of Civil Procedure and to be completed by July 1, 2005, concerning <u>only</u> the circumstances of the creation of the version of document no.

contained in the January 20, 2005, production, and no other subject during that time. The parties shall then submit motions by July 21, 2005, directed toward the further resolution of this case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 2, 2005

cc:  Harold W. Caton, pro se
     T. David Plourde, Esquire